**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PBS BRAND CO., LLC, *et al.*, | Case No. 20-13157 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **Docket Ref. Nos. 197 & 280** |

**DECLARATION OF ALEXANDER SCHOENBAUM IN SUPPORT OF DEBTORS'
SALE OF PURCHASED ASSETS FREE AND CLEAR OF
LIENS, ENCUMBRANCES, AND INTERESTS**

I, Alexander Schoenbaum, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury to the best of my knowledge, information, and belief:

1. I am the Chief Executive Officer and co-founder of CrowdOut Capital, LLC and its affiliates ("CrowdOut"). I have more than 17 years of direct lending, private equity, and investment banking experience and have provided financial and strategic advisory services to many growing middle market companies across a range of industries including: restaurant, consumer, retail, telecom, media, manufacturing, technology, financial services, oil & gas, and industrials. Previously, I was a Managing Director at Westlake Securities, a boutique investment bank, with a focus on restaurant and retail financial strategic and advisory services. Prior to Westlake Securities, I founded Swift Estate Capital, a specialty finance firm focused on lending

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are (1) PBS Brand Co., LLC, a Delaware limited liability company (7897), (2) Punch Bowl Social, Inc., a Delaware corporation (9826), (3) Punch Bowl Arlington, LLC, a Delaware limited liability company (7250), (4) Punch Bowl Atlanta Battery, LLC, a Delaware limited liability company (8973), (5) Punch Bowl Austin, LLC, a Delaware limited liability company (0366), (6) Punch Bowl Chicago West Loop, LLC, a Delaware limited liability company (4024), (7) Punch Bowl Cleveland, LLC, a Delaware limited liability company (8583), (8) Punch Bowl Dallas Deep Ellum, LLC, a Delaware limited liability company (8239), (9) Punch Bowl, LLC, a Colorado limited liability company (2287), (10) Punch Bowl Indianapolis, LLC, a Delaware limited liability company (0144), (11) Punch Bowl Minneapolis, LLC, a Delaware limited liability company (9815), (12) Punch Bowl Sacramento, LLC, a Delaware limited liability company (8092), (13) Punch Bowl SanDiego, LLC (6440), (14) Punch Bowl Austin Congress, LLC a Delaware limited liability company (0964), and (15) Punch Bowl Ranchocucamonga, LLC, a Delaware limited liability company (6646).

to high net worth individuals. I also worked at Blue Sage Capital, a middle market private equity and debt firm, focused on finding investment opportunities, performing due diligence, structuring and executing transactions, and supporting portfolio company management to grow their businesses, and started my career working in Piper Jaffray & Co.'s consumer and restaurant investment banking group. I received a Bachelor of Science in Business Administration degree in Finance, International Business, and Political Science from Washington University in St. Louis.

2. I hereby submit this declaration in support of (i) the proposed sale of substantially all of the assets of debtor PBS Brand Co., LLC and its affiliated debtors and debtors in possession (collectively, the "Sellers" or the "Debtors") pursuant to that certain Purchase Agreement (as amended, amended and restated, modified, or supplemented from time to time and including all exhibits, schedules, and ancillary agreements related thereto as each may be amended from time to time, the "Purchase Agreement")[2] by and between the Sellers and New PBS Brand Co., LLC (the "Purchaser") and (ii) the *Debtors' Motion for Entry of an Order Approving (I)(A) the Debtors' Entry Into Stalking Horse Agreement and Related Bid Protections; (B) the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (C) the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, and (E) Dates for an Auction and Sale Hearing, (II)(A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Related Relief and (IV) Granting Related Relief*

---

[2]. Unless otherwise defined or noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

[Docket No. 197] (the "Sale Motion").  I am above 18 years of age and am an authorized representative of CrowdOut and the Purchaser.  I am generally familiar with such entities' operations and financial affairs.  I am competent to testify to the facts set forth herein.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information learned from my review of certain relevant documents, and information that I have received from other members of, as applicable, CrowdOut's and/or Purchaser's management teams and/or advisors.  If I were called to testify, I could and would testify competently to the facts set forth herein.

### CrowdOut's Partnership with CVC and Creation of the Purchaser

4. The Purchaser was formed pursuant to a partnership between CrowdOut and Conversion Venture Capital ("CVC") for the purpose of, among other things, consummating the purchase of the Purchased Assets and the assumption of the Assumed Liabilities through the Purchase Agreement.  CrowdOut, CVC, and their respective qualifications and competencies are described below:

> **CrowdOut.**  CrowdOut is the manager of both a private credit fund and a private credit platform, providing capital to middle-market companies.  Since its inception, CrowdOut has originated and closed a number of lending transactions in the middle market.  CrowdOut is led by a team of investment professionals and, in the last five years, has originated and committed capital to over $280 million in transactions.  The transactions include senior secured loans to several dining and entertainment locations, including, but not limited to Wild Wing Cafe, Tender Greens, and El Tiempo Cantina.  CrowdOut manages investments on behalf of pension funds, insurance companies, funds of funds, family offices, and individuals with significant management experience, including restaurant and entertainment experience.  CrowdOut is able to draw on the diversity and experience of its investor base to assist its borrowers and has frequently done so.[3]

---

[3] In addition to the Purchase Agreement, CrowdOut has funded these Chapter 11 Cases in its capacity as lender under (i) the Debtors' prepetition secured credit facility (the "Prepetition Facility") and (ii) the Debtors' postpetition secured, super-priority debtor-in-possession financing facility (the "DIP Facility" together with the Prepetition Facility, the "Financing Agreements").  *See Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral and Granting Adequate*

**Conversion Venture Capital.** CVC is an investment firm focused on control and growth investments in quality mid-market businesses that would benefit from a long term investment perspective. CVC invests its own capital and, as a result, enjoys greater flexibility with regard to structuring and investment-time horizons. CVC has expertise investing in multiple industries and subsectors across a variety of business cycles and through various economic conditions, including the restaurant and hospitalities industry.[4]

5. CrowdOut has put together a management team with vast experience in both turn around management and the retail dining industry. This includes John Haywood, who successfully oversaw the reopening of the majority of the Debtors' locations last fall. CrowdOut also intends to keep substantially all of the Debtors' current and prior managers and operations team. Finally, David Lloyd, an experienced restaurant operator, including Bertucci's (President and CEO, CFO), Taco Bueno (EVP & CFO), Taco Cabana (SVP & CFO), will serve on the New Punch Bowl board. CrowdOut believes that this experienced management team will be able to swiftly get the Purchaser up and running as soon as the local and state COVID restrictions are lifted. CrowdOut is also working with the management team to prepare a comprehensive business plan, a copy of which is attached hereto as Exhibit A and filed under seal.

## The Purchaser's Financial Resources

6. The Purchaser has the financial means to consummate the sale and perform under the Assumed Contracts. With respect to the sale, the Purchaser is well capitalized and has the ability to pay the cash portion of the Purchase Price pursuant to the Purchase Agreement. With respect to the Assumed Contracts, the Purchaser has not yet finally determined which of Sellers' contracts and leases will be assumed and assigned in connection with the sale. Still, the Purchaser is familiar with Sellers' contracts and leases—including those identified on the (i)

---

*Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 250].

[4] Information set forth in this paragraph is based, in part, upon my review of certain publicly available documents and information.

*Notice of Potential Assumption of Executory Contracts or Unexpired Leases and Cure Amounts* [Docket No. 322]; (ii) *Amended Notice of Executory Contracts and Leases to be Assumed and Assigned or Designated to Successful Bidder* [Docket No. 362] (iii) *Second Amended Notice of Executory Contracts and Leases to be Assumed and Assigned or Designated to Successful Bidder* [Docket No. 373]; and (iv) the Schedules to the Purchase Agreement—and the terms and conditions thereof. The Purchaser believes that is well positioned to step into, and fully perform under, any and all of the Assumed Contracts assigned to it pursuant to the Purchase Agreement. As discussed above, each of CrowdOut and CVC, through the Purchaser, has extensive experience operating middle-market entertainment and hospitality companies, with a focus on regional and national restaurant chains and franchises that share many characteristics with the Debtors' business. Consequently, the Purchaser has the technical ability and skill, industry-specific knowledge and experience, and financial wherewithal needed to perform under any Assumed Contracts for the duration thereof. Accordingly, it is my understanding that the Purchaser has satisfied the requirements set forth in section 365 of the Bankruptcy Code.

7. Moreover, CrowdOut and CVC are committing to provide at least $10 million of new capital to the Purchaser, and are able to add additional capital if they consider it appropriate, and may also seek additional funding through the U.S. Small Business Administration's Paycheck Protection Program, as well as from any other applicable sources of funding provided by local and Federal government entities, in order to give the landlords greater confidence, accelerate hiring, and create a more stable work environment. Accordingly, the Purchaser has the financial wherewithal to close the sale and perform under the Assumed Contracts.

**CrowdOut and the Purchaser Have Acted in Good Faith**

8. Neither CrowdOut nor the Purchaser is an insider of any of the Debtors as that term is defined in the Bankruptcy Code. The Purchaser, through CrowdOut, and the Debtors extensively negotiated the terms and conditions of the Purchase Agreement in good faith and at arm's length. The Purchaser is purchasing the Purchased Assets and has entered into the Purchase Agreement in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m), and I understand that the Purchaser is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding. CrowdOut and the Purchaser acknowledged and recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets throughout these Chapter 11 Cases. Neither CrowdOut nor the Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction and no agreement to control any aspect of the Purchase Agreement was ever contemplated or entered by the Purchaser.

9. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n). The Purchaser, through CrowdOut, and the Debtors were represented by their own respective counsel and other advisors during such arm's-length negotiations in connection with the Purchase Agreement and the sale.

10. The Purchaser would not have entered into the Purchase Agreement, and would not close under the terms of the Purchase Agreement, if the sale of the Purchased Assets and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of any liens, claims, and interests (other than as may be set forth in the Purchase Agreement).

**No Successor Liability**

11. The Purchaser is acquiring the Purchased Assets free and clear of any liens, claims, and interests as set forth in the Purchase Agreement and the Sale Order. Such relief is a precondition to the Purchaser's acquisition of the Purchased Assets and its obligations under the Purchase Agreement. The Purchaser would not have agreed to acquire the Purchased Assets pursuant to the Purchase Agreement if it could be held liable for claims against the Debtors under any theory, including successor liability, *de facto* merger, or similar theories.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 9th day of March 2021.

By */s/ Alexander Schoenbaum*
Alexander Schoenbaum
Chief Executive Officer
CrowdOut Capital, LLC

[Signature Page to Declaration of Alexander Schoenbaum]